# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

BLU FLIP PHONE, LOCATED AT 1200 N PATTERSON
AVENUE, WINSTON SALEM, NC

)
)
)
)
)
)

Case No. 1:25MJ 42

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

BLU FLIP PHONE, located at 1200 N Patterson Avenue, Winston Salem NC, as further described in Attachment A

located in the _____ Middle _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a) | Distribution/Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW LA VALLEY (Affiliate) Digitally signed by MATTHEW LA VALLEY (Affiliate) Date: 2025.02.07 13:39:09 -05'00'

*Applicant's signature*

Matthew La Valley/ Task Force Officer

*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 2/11/2025

*Judge's signature*

City and state: Winston-Salem, North Carolina

United States Magistrate Judge Joi Elizabeth Peake

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Matthew La Valley, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. I am a Police Officer for the Winston-Salem Police Department (WSPD) and have been so employed since June, 2013. I am a graduate of the North Carolina Basic Law Enforcement Training taught by WSPD. I am also duly sworn as a Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). During my career in law enforcement, I have participated in multiple advanced trainings to include the Police Law Institute,

Drug Investigations for Patrol Officers, Narcotic Investigation Techniques, Roadside Interdiction and Detecting Deception, Violent Criminal Apprehension Techniques, and Motorcycle Outlaw and White Supremacy Gangs.

4.    I have spoken to, and worked with, more experienced federal, state, and municipal narcotics agents and officers.  During the course of my employment as a law enforcement officer, I have participated in several investigations of illicit drug trafficking organizations involving the use of confidential informants, electronic and physical surveillance, the analysis of telephone toll records, investigative interviews, and the service of search and arrest warrants.  These include investigations of the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 843(b).

5.    I have been involved in the execution of numerous state and federal search warrants related to drug trafficking investigations.  As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking

2

organizations in their efforts to import, conceal, manufacture, and distribute controlled substances including through the use of vehicles.

6. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: (a) my own involvement in drug investigations and searches during my career as a law enforcement officer, as previously described; (b) what other agents and police officers have advised and related to me about the substance and results of their own drug investigations; and (c) other intelligence information provided through law enforcement channels.

7. The conclusions and opinions set forth below are based on my experience and training as a law enforcement officer, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. The facts set forth in this Affidavit are known to me as a result of my personal participation in this investigation and through conversations with other federal, state, and local law enforcement officers and personnel. The following is not an exhaustive recitation of the facts agents and officers have learned during the course of this investigation but are the facts that I believe sufficiently establish probable cause. References to law enforcement personnel

3

in this case will generally be referred to as "agents" or "agents/officers," unless specified by name and agency.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.     The property to be searched shall be referred to as "**TARGET DEVICE 2**." **TARGET DEVICE 2** is a BLU Flip Phone. A photograph of **TARGET DEVICE 2** has been attached to this application for further identification.

9.     **TARGET DEVICE 2** is currently at the Winston-Salem Police Department Beaty Center, located at 1200 N Patterson Avenue, Winston-Salem, North Carolina.

10.     The applied-for warrant would authorize the forensic examination of **TARGET DEVICE 2** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11.     This investigation began in July 2023, after TFO La Valley obtained information from an ATF Confidential informant (hereinafter CI 1), regarding a subject with the alias of "Man" trafficking methamphetamine and fentanyl. The CI provided the phone number of 336-473-4519 and Facebook account "Man Sobaby", which TFO La Valley was able to determine was Chrisshawn MOBLEY.

4

12.     On March 27, 2024, WSPD applied for and obtained a search warrant for 2721 Bridgeport Drive. During surveillance of the residence, officers observed SMITH leave 2721 Bridgeport Drive and drive to a gas station. Officers subsequently arrested SMITH for an outstanding warrant for his arrest. SMITH was in possession of marijuana, Oxycodone, and $2,238 of US Currency.

13.     Shortly thereafter, officers surveilling the residence observed subjects beginning to exit the home. To prevent the loss of evidence, officers secured the residence and detained the subjects who were attempting to leave. The subjects leaving the residence were identified as Daquan PENDLETON and Charlynn MANNS. PENDLETON was found in possession of a cell phone and $1,408 in US Currency.

14.     While detaining PENDLETON and MANNS, Officers heard the front door slam and observed Chrisshawn MOBLEY through the window running throughout the residence and ultimately poking his head from the garage door window. SWAT personnel contacted MOBLEY, and he was subsequently detained in handcuffs. MOBLEY was found in possession of approximately $6,700 in US Currency, and a cell phone.

15.     During the search of the residence officers located multiple items of drug paraphernalia, to include a blender with white residue, a digital

5

scale, and several large opened plastic baggies that contained

methamphetamine in the recycle bin outside the residence.

16.     Also located on the living room couch was a Glock 27 handgun. This

firearm was later determined to be fully automatic. PENDLETON,

MOBLEY, and SMITH are all convicted felons. The narcotics seized from

the search warrant were sent to NMS Labs, which resulted in the

narcotics being identified as 1.13 grams of methamphetamine, .04 grams

of methamphetamine and .15 grams of amphetamine.

17.     On April 12, 2024, TFO La Valley applied for a Federal Search warrant

for the cell phone seized from MOBLEY. TFO La Valley presented the

search warrant to U.S. Magistrate Judge, the Honorable L. Patrick Auld,

who found probable cause for the search warrant.

18.     TFO La Valley executed the search warrant and was able to obtain the

results of the cell phone extraction. During the review of the extraction

results from MOBLEY's seized cell phone, multiple co-conspirators were

identified in the trafficking of methamphetamine, fentanyl, firearms, and

stolen motor vehicles.

19.     During the review of MOBLEY's cell phone extraction results, TFO La

Valley identified Raphael JENKINS as a trafficker of methamphetamine.

During the review of text message threads between MOBLEY and

6

JENKINS, using phone number 336-807-3304, TFO La Valley identified

approximately 840 grams of methamphetamine being trafficked from

MOBLEY to JENKINS in March 2024.

20.     TFO La Valley obtained information from a Winston-Salem Police

Department Confidential Informant (hereinafter referred to as CI 2), who

advised they could purchase narcotics, namely methamphetamine and

fentanyl from JENKINS.

21.     On December 4, 2024, Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF) Task Force Officers (TFO) and ATF Special Agent(s),

Federal Bureau of Investigation (FBI) Task Force Officer(s) and Winston-

Salem Police Department (WSPD) officers conducted an undercover

operation, in which CI 2 purchased approximately 9.25 grams of fentanyl

from Laquan PENDLETON in Winston-Salem, NC.

22.     TFO La Valley and Officer Meyer met with CI 2 at a predetermined

location and searched their person and the CI vehicle (CIV), and no

contraband was located.

23.     TFO La Valley directed the CI 2 to contact JENKINS and request to

purchase fentanyl. CI 2 then made a Facebook messenger call to

JENKINS in TFO La Valley's presence, to JENKINS Facebook messenger

account "Tonyy Montana"
(www.facebook.com/profile.php?id=61556571351242).

24. JENKINS answered the call and TFO La Valley heard JENKINS advise he was attempting to contact a subject (unknown) to obtain the fentanyl to sell to CI 2. JENKINS advised he would contact CI 2 once arrangements had been made to conduct the transaction. A short time later, CI 2 was contacted by JENKINS, who told CI 2 to respond to the Speedway located at 2026 S Hawthorne Rd, Winston-Salem, NC, to conduct the transaction with an unknown subject.

25. TFO La Valley instructed the CI 2 to drive to 2026 S Hawthorne Road to meet with the unknown subject regarding the purchase of fentanyl. TFO La Valley provided CI 2 five hundred dollars ($500.00) of pre-recorded ATF Agent Cashier funds.

26. At approximately 4:40pm, a silver in color 2020 Chrysler 300 bearing NC Registration RJB1083 pulled into the parking lot of 2026 S Hawthorne Road and parked at a gas pump. CI 2 exited the CIV and entered the backseat of the Chrysler 300. TFO VanKuren conducted a query of the vehicle registration through NC DMV, which showed the vehicle to be registered to Laquan Marcese PENDLETON (B/M 6/13/1990).

8

27.    At approximately 4:45pm, the CI exited the Chrysler 300 and returned to the CIV. CI 2 contacted TFO La Valley and Officer Meyer, confirming the transaction was successful and that the occupants of the vehicle stated they would bring JENKINS the currency for the narcotic transaction. CI 2 then left the area, with TFO La Valley and Officer Meyer followed CI 2 out of the area.

28.    TFO La Valley and Officer Meyer met CI 2 at a predetermined location. TFO La Valley recovered the purchased fentanyl from CI 2. Following the operation, CI 2 and the CIV were again searched with negative result for any contraband. TFO La Valley debriefed CI 2 who advised the subject who had sold the narcotics was a subject known as "Quan". Additionally, CI 2 advised there was a second subject in the vehicle who CI 2 advised was known as "Dino". CI 2 advised that "Quan" weighed the suspected fentanyl on a digital scale on the center console. TFO La Valley showed CI 2 the attached image of PENDELTON to determine if that subject is "Quan", which CI 2 confirmed.

9



29.    As officers continued conducting surveillance on the Chrysler 300, a

green in color passenger car parked at a nearby gas pump. The front

passenger of the Chrysler was observed walking to the driver of the green

passenger car and conducted what TFO La Valley knows from his training

and experience to be a hand-to-hand transaction. The passenger of the

Chrysler 300 returned to the vehicle and drove out of the parking lot.

30.    Officers maintained surveillance on Chrysler 300 and followed it to

Dicks Sporting Goods, located at 164 Hanes Mall Cir, Winston-Salem, NC

27103, where the vehicle parked in the parking lot. At approximately

4:55pm, a 2011 Nissan Altima bearing NC registrationVCP8701 pulled

into the parking lot near the Chrysler 300. The passenger of the Nissan

Altima was observed exiting the vehicle and entering the backseat of the

Chrysler 300. After approximately one minute, the subject exited the

backseat of the Chrysler 300 and returned to the Nissan Altima, at which

point the Chrysler 300 drove from the area and the Nissan Altima drove to

10

the back to Dicks Sporting Goods and parked. A query of the vehicle registration showed the Nissan to be registered to Lynda Mary O'Connor.

31.     Officers were able to identify the subject who exited the Nissan Altima and enter the Chrysler as Raymond John O'Connor. Both Raymond and Lynda have involvement in narcotic investigations associated with one another, as well as share an address in the local police database, 5456 Moravian Heights Lane, Clemmons NC. It should also be noted that on December 3, 2024, a reported overdose occurred at the residence of 5456 Moravian Heights Lane, in which suspected fentanyl was located. The listed subject who overdosed is Lynda O'Connor.

32.     Officers maintained surveillance on the Chrysler 300 and 128 Charleston Court, however the vehicle was lost in traffic.

33.     The suspected fentanyl was weighed, showing to be approximately 9.25 grams in the packaging. The fentanyl was also field tested, resulting in a positive indication for the presence of fentanyl.



34. TFO La Valley has reviewed PENDLETON's criminal history and found PENDLETON to be a convicted felon. PENDLETON's felony convictions consist of PWISD Marijuana (2009CR 058084), Possession of Heroin (2014CR 061286), 1st Degree Kidnapping (15CRS 061732), and Manslaughter (15CRS 061732).

35. On December 17, 2024, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents (SA) and ATF Task Force Officers (TFO), and Officers with the Winston-Salem Police Department (WSPD) conducted an undercover operation, wherein CI 2 and an ATF CI (hereinafter referred to as CI 3) purchased approximately 121 grams of methamphetamine from Laquan PENDLETON at 715 W Fifth Street, Winston-Salem, NC.

36. TFO La Valley and SA Crocker met with the CIs at a predetermined location and searched their person and the CI vehicle (CIV), resulting in no contraband being located. The CI 3 was provided with $2,600.00 of prerecorded ATF Agent Cashier Funds.

37. TFO La Valley instructed CI 2 to contact PENDLETON and arrange to purchase 8 ounces of methamphetamine and determine a location for the narcotic transaction. Additionally, TFO La Valley instructed CI 2 to leave the Agent Cashier Funds in the CIV and upon speaking with

12

PENDELTON in person after he arrived at the agreed upon location for the controlled buy. CI 2 was instructed to inform PENDELTON the purchase of methamphetamine was for CI 3, in an effort to introduce CI 3 to PENDELTON.

38.     During the controlled purchase, the CIs were equipped with audio/video recording equipment. The surveillance units, observed and heard the following, transmitted via the surveillance recording equipment worn by the CI and via ATF radio.

39.     At approximately 3:56pm, CI 2 made phone contact with PENDELTON at 336-602-4023. PENDELTON and CI 2 agreed to meet at 715 W Fifth Street, Winston-Salem, NC (Quality Mart Gas Station). CI 2 and CI 3 were instructed by TFO La Valley to respond to 715 W Fifth Street in the CIV together and conduct the controlled purchase of 8 ounces of methamphetamine.

40.     At approximately 4:10pm, the CI's arrived in the CIV at 715 W Fifth Street and parked at the gas pumps. CI 2 again made phone contact with PENDELTON informing him what vehicle the CI was in. CI 2 stepped out of the vehicle.

41.     At approximately 4:13pm, a grey in color Chrysler 300 bearing NC registration RJB1083 pulled into the parking lot and parked at the gas

pump behind the CIV. CI 2 then entered the passenger seat of the Chrysler 300, which was only occupied by PENDLETON.

42.     At approximately 4:14pm, CI 2 exited the Chrysler 300 and came back to the CIV. CI 2 then obtained the pre-recorded Agent Cashier Funds and the recording device. CI 2 then responded back to the Chrysler 300 and entered the passenger seat of the vehicle. While in the Chrysler 300, CI 2 provided PENDELTON the $1,280 of Agent Cashier Funds for approximately 120 grams of methamphetamine. During the conversation, PENDLETON advised he was going to go get the remaining methamphetamine the CI was owed.

43.     At approximately 4:17pm, CI 2 was about to exit the Chrysler 300 when PENDLETON advised he was going to call an unknown subject to "see if he's ready". This is consistent with PENDLETON calling his source of supply for methamphetamine to obtain the remaining narcotics. While on the phone, PENDLETON told the unknown subject he was speaking with, "I'm on the way back, I got time to run back to the house right quick.", "alright, I'll just grab it and walk right back out".



44. At approximately 4:18pm, CI 2 exited the Chrysler 300 and entered the CIV. The Chrysler 300 then pulled out of the parking lot of the Quality Mart and turned south on Broad Street. Officers followed the Chrysler 300 to the area of Liberty Street and 14th Street, where the Chrysler turned east on 14th Street.

45. The CIV drove to and parked at 2825 New Walkertown Avenue and the CIs waited for PENDLETON.

46. At approximately 4:32pm, the Chrysler 300 was observed traveling south on Douglas Hill Drive and then turned east on Bowen Blvd.

47. At approximately 4:33pm, the Chrysler 300 then turned south on New Walkertown Avenue and parked in the parking lot of 2825 New Walkertown Avenue. CI 2 exited the CIV and met with PENDLETON. PENDLETON did not have the remaining 4 ounces of methamphetamine but was still going to attempt to locate someone who could supply it. CI 2 then exited the Chrysler 300 and returned to the CIV.

15

48.   The CIV was then followed out of the area. The CIs were instructed to
      return to the predetermined location. TFO La Valley and SA Crocker met
      the CIs at the predetermined location. TFO La Valley recovered the
      purchased narcotics from the CI. TFO La Valley also recovered the
      remaining one thousand three hundred twenty dollars ($1,320.00) of
      Agent Cashier Funds.

49.   During the debrief of CI 2, CI 2 confirmed PENDLETON was the
      subject who sold the methamphetamine. Following the operation, the CI
      and the vehicle were again searched with negative result for any
      contraband.

50.   The suspected methamphetamine was weighed and was determined to
      be approximately 121.6 grams. A field test of the suspected
      methamphetamine was conducted which resulted in a positive test for the
      presence of methamphetamine.



51.    TFO La Valley entered the phone number for PENDLETON, 336-602-4023, in Cash App, which showed the phone number associated with "QuQu" with a Cashtag of $QFREE33.



52.    On December 20, 2024, TFO La Valley presented an order and application for authorizing GPS and Geo-location monitoring for phone number 336-602-423, the phone number associated with PENDLETON, to North Carolina Superior Court Judge Aaron Berlin. Superior Court Judge Berlin found probable cause and approved the order and application. The order and application were subsequently submitted to T-Mobile for processing.

53.    On December 21, 2024, TFO La Valley received the subscriber information and detailed call records related to 336-602-4023. The subscriber of the phone showed to be Laquan PENDLETON, with a date of birth of 6/13/1990 and social security number of XXX-XX-6456, the same as the identified Laquan PENDLETON.

17

54.   TFO La Valley reviewed the top contacts for PENDLETON. The top

contact for PENDLETON was for phone number 336-575-4434, later

identified as Chanell ROBINSON. TFO La Valley queried phone number

336-575-4434 through Duke Energy "Report an Outage" and located a

partial address of "2309 Elb*****" in Winston-Salem. It is important to

note, you do not need to report an outage to obtain the partial address

information. TFO La Valley entered "2309 Elb" into Google Maps, which

showed 2309 Elbon Drive, Winston-Salem North Carolina. This residence

is located off Bowen Boulevard and connects to Douglas Hill Drive, where

PENDLETON was seen driving from after the December 17, 2024,

controlled buy.

55.   At approximately 1038 hours, TFO La Valley drove to the area of 2309

Elbon Drive, Winston Salem, NC, and located PENDLETON's Chrysler

300 parked in the residence's driveway.

56.   On December 22, 2024, TFO La Valley drove to the area of 2309 Elbon

Drive, Winston Salem, NC and again located PENDLETON's Chrysler 300

parked in the residence's driveway. Also parked in the driveway was a

2013 Hyundai Sonata bearing North Carolina registration JLX8920. The

vehicle registration was queried through the North Carolina Department

of Motor Vehicles (NC DMV), showing it to be registered to Chanell

18

Monique ROBINSON and Zaffar Iqbal KHAN. The registered address for the vehicle is 2309 Elbon Drive, Winston-Salem NC. A query of ROBINSON's driver's license was conducted through NC DMV, showing ROBINSON's listed address to also be 2309 Elbon Drive, Winston Salem, NC. A query of KHAN's driver's license through NC DMV showed his listed address to be 4861 Westchester Road, Winston Salem NC.

57. On January 4, 2025, TFO La Valley drove to the area of 2309 Elbon Drive, Winston Salem, NC and again located PENDLETON's Chrysler 300 parked in the driveway of the residence.

58. On January 6, 2025, surveillance was conducted on 2309 Elbon Drive, Winston Salem, NC by officers with the Winston-Salem Police Department, who advised they observed PENDLETON's Chrysler 300 parked in the driveway of the residence.

59. On January 8, 2025, TFO La Valley conducted surveillance on 2309 Elbon Drive, Winston Salem, NC, during which time PENDLETON's Chrysler 300 was parked in the driveway. During the surveillance, TFO La Valley observed a subject open the front door of the residence and grab the mail out of the mailbox affixed to the home. TFO La Valley was able to identify this subject as PENDLETON. After retrieving the mail,

PENDLETON took the mail into the residence and shut the front door behind him.

60. On January 13, 2025, ATF Task Force Officer La Valley applied for a search warrant for 2309 Elbon Drive, Winston-Salem, NC in relation to the ongoing investigation into Laquan PENDLETON trafficking methamphetamine and fentanyl. Included in the search warrant was PENDLETON's Chrysler 300, bearing North Carolina Registration RJB1083. U.S. Magistrate Judge Joe L. Webster reviewed the search warrant and found probable cause for same.

61. After obtaining the search warrant, TFO La Valley continued conducting surveillance on 2309 Elbon Drive. At approximately 7:30pm on January 16, 2025, TFO La Valley observed the Chrysler 300 pulled into the driveway of 2309 Elbon Drive.

62. On January 17, 2025, at approximately 7:00am, TFO La Valley observed Chrysler 300 backed in at 2309 Elbon Drive. Also parked at the residence was the Hyundai Sonata bearing NC registration JLX8920.

63. On January 17, 2025, TFO La Valley coordinated with ATF personnel and WSPD personnel to execute the search warrant on PENDLETON and 2309 Elbon Drive.

20

64.  Detective Bryant was tasked with maintaining surveillance on 2309 Elbon Drive until all assisting officers could get in position in the surrounding area. Prior to officers being in position, Detective Bryant observed PENDLETON exit the front of the residence and enter the Chrysler 300 and drive the vehicle toward Bowen Blvd.

65.  Officers circulated the area and were able to locate the Chrysler 300 traveling southbound on US-52. Officers continued following the Chrysler 300, which eventually drove to and parked at Davidson-Davie Community College, located at 941 Davidson Community College Road, Thomasville NC. Once parked, PENDLETON exited the Chrysler 300 and went into one of the buildings at the college. WSPD SWAT personnel, RAC Walsh and TFO VanKuren established positions around the Chrysler 300 and waited for PENDLETON to exit the college building.

66.  During this time, a female, identified as Chanell ROBINSON exited the residence of 2309 Elbon Drive and entered the Hyundai parked in the driveway. She subsequently drove the vehicle from the area. She was not followed.

67.  While PENDLETON was inside the building, Sgt. Gerald with the Winston-Salem Police Department coordinated Mutual Aid with the Davidson County Sheriff's Department regarding the investigation into

21

PENDLETON. The Davidson County Sheriff's Department requested mutual aid at approximately 0924 hours. At approximately 0930 hours, PENDLETON exited the college building and began to walk toward his Chrysler 300, at which point he was detained by assisting officers. Officers searched PENDLETON and located **TARGET DEVICE 1** and **TARGET DEVICE 2** in his possession. Once PENDLETON was detained, officers maintaining surveillance on 2309 Elbon Drive executed the search warrant at the residence. Officers approached the front of the residence and had to force entry to the front door of the residence. Officers cleared the residence, and no subjects were located inside.

68. During the search of 2309 Elbon Drive, officers located a Taurus G2 PT111 9mm handgun (S/N: TKM73103) with an extended magazine loaded with 13 rounds of 9mm ammunition, a small baggie containing apparent marijuana, various loose ammunition, and a box of sandwich baggies.

69. A search of the Chrysler 300 resulted in ATF personnel locating 2 small baggies (inside multiple other small baggies) containing an off-white chunky powder substance. This substance was field-tested and showed a positive indication of the presence of fentanyl. A digital scale and **TARGET DEVICE 3** were also located inside the vehicle.

70.    PENDLETON was transported to the Winston Salem Police Department Public Safety Center and was sat in interview room 4. TFO La Valley and TFO VanKuren entered the room to interview PENDLETON. TFO La Valley advised PENDLETON of his Miranda Rights, which PENDLETON waived and agreed to answer questions without an attorney present.

71.    PENDLETON stated he is currently in college to be a diesel mechanic and has been doing so for the past year.

72.    PENDLETON was asked how long he has been at 2309 Elbon Drive, which he initially stated he does not stay there, advising he lives at 370 Janet Avenue. PENDLETON stated 2309 Elbon Drive is his girlfriend's residence. TFO La Valley asked PENDELTON how often he sleeps at 2309 Elbon Drive, which he stated he stays there most of the week.

73.    TFO La Valley informed PENDLETON that he is involved in an ongoing investigation into the trafficking of narcotics. TFO La Valley told PENDLETON that apparent fentanyl was found in the Chrysler 300, which PENDLETON stated was cocaine. PENDLETON was asked if he is employed, which he stated he was not. When asked how he makes money, PENDLETON stated he gets financial aid for school and does "odd jobs here and there".

74.    TFO La Valley told PENDLETON he knows him to sell drugs, to include fentanyl. PENDLETON asked why TFO La Valley thought PENDLETON sold fentanyl, which it was explained that through the investigation, law enforcement has purchased fentanyl from PENDLETON. PENDLETON stated the only way fentanyl would have been bought from PENDLETON was if he sold cocaine that had been mixed with fentanyl. TFO La Valley then confirmed with PENDLETON if he sells cocaine, which PENDLETON confirmed he does, stating, "I make a living".

75.    PENDLETON stated he got out of prison on May 18, 2023. When asked if he started selling drugs once he got out of prison, he stated he did not until he started hanging with some of his old friends.

76.    TFO La Valley told PENDLETON a firearm was seized from 2309 Elbon Drive, which PENDLETON advised it belongs to his girlfriend, ROBINSON. PENDLETON stated he and ROBINSON have been together for about one year.

77.    PENDLETON was then asked what else he sells other than cocaine, due to law enforcement knowing his associates are involved in the distribution of fentanyl and methamphetamine. PENDLETON responded, "you haven't gotten any meth from me". TFO La Valley asked if PENDLETON has ever dealt with methamphetamine, which he responded, "Like I said, hanging

around the wrong people. When I came out, they was already doing what they do.", "they're still doing what they do".

78. When asked how often he gets cocaine, PENDLETON states "whenever I have some bills to pay". PENDLETON was asked how he makes money selling cocaine, which he advised he "middleman's" deals.

79. Based on my training, experience, and knowledge of this case, I know that drug traffickers regularly communicate utilizing cellular telephones, such as **TARGET DEVICE 2**, to coordinate drug transactions with drug customers and drug sources of supply. Additionally based on my training, experience, and knowledge of this case, I know that PENDLETON uses digital devices to coordinate drug sales, drug shipments, discuss the transfer of drug proceeds. It is my belief that PENDLETON will have additional communication within **TARGET DEVICE 2** regarding drugs and/or money transactions.

80. Based on the information provided in this application, I submit there is probable cause to believe **TARGET DEVICE 2** will contain evidence of drug trafficking conducted by PENDLETON. **TARGET DEVICE 2** is currently stored at the Winston-Salem Police Department Beaty Center, located at 1200 N Patterson Avenue, Winston-Salem, North Carolina.

81. In my training and experience, I know that **TARGET DEVICE 2** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when **TARGET DEVICE 2** first came into the possession of the Winston-Salem Police Department and TFO La Valley.

## TECHNICAL TERMS

82. Based on my training and experience, I use the following technical term to convey the following meanings:

> Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

83. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly,

26

things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

84. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **TARGET DEVICE 2** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **TARGET DEVICE 2** because:

      a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper

27

context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

85.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **TARGET DEVICE 2** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of **TARGET DEVICE 2** to human inspection in order to determine whether it is evidence described by the warrant.

86. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize the execution of the warrant at any time in the day or night.

## CONCLUSION

87. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **TARGET DEVICE 2** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Matthew LaValley
Matthew La Valley
ATF Task Force Officer
Bureau of Alcohol, Tobacco,
Firearms and Explosives

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this __11__ day of February, 2025, at __1:15__ a.m./p.m.

Honorable Joi Elizabeth Peake
United States Magistrate Judge
Middle District of North Carolina

29

## ATTACHMENT A

The property to be searched is as follows:

a. **TARGET DEVICE 2**: Blu Flip phone



The **TARGET DEVICE** is currently at the Winston-Salem Police Department Beaty Center, located at 1200 N Patterson Avenue, Winston-Salem, North Carolina.

This warrant authorizes the forensic examination of **TARGET DEVICE 2** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on **TARGET DEVICE 2** described in Attachment A that relate to violations of 21 U.S.C. §841 (possession with the intent to distribute and to distribute a controlled substance) and involve PENDLETON, as follows:

      a.  Electronic communications between PENDLETON regarding controlled substances;

      b.  lists of customers and related identifying information;

      c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

      e.  all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned **TARGET DEVICE 2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.